IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TAM THI VO,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner, Social Security Administration,<br><br>    Defendant. | Case No. C 11-01486 HRL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 18, 19]** |

Plaintiff Tam Thi Vo ("Vo") appeals a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for summary judgment. Upon consideration of the papers filed by the parties,[1] and for the reasons set forth below, Vo's motion is denied and the Commissioner's cross-motion is granted.[2]

**I. BACKGROUND**

Vo was born in Vietnam in 1955, attended school there through the sixth grade, and worked there on a farm, as a machinist, and as a seamstress. Admin. R. ("AR") 48-49. She moved to the

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 7-1(b).

[2] All parties have consented to this matter being adjudicated by the undersigned. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

1  United States in 1995 or 1996, and has not worked at all since then. Id. On November 30, 2007,[3]
2  she applied for SSI alleging disability as of June 1, 1996.[4] AR 91, 66-67. She claimed that she was
3  unable to work because of post traumatic stress disorder, insomnia, anxiety, and depression. AR 68.
4  Her application was denied initially and upon reconsideration. AR 68, 74.

5  On September 15, 2009, an Administrative Law Judge ("ALJ") conducted a hearing. AR
6  41-65. Vo was represented by counsel at the hearing, and she testified with the aid of a Vietnamese
7  interpreter. Id. Vo stated that she lives with her husband and that one of their adult children stays
8  with them on weekends when he is home from college. AR 45-47. She described numerous
9  ailments, including headaches, insomnia, back pain, depression, and issues with her memory; she
10 stays home all day, sometimes doing housework and sometimes resting. AR 49-50. Her testimony
11 was extremely vague and contradictory with respect to when she suffers the reported ailments and
12 how she treats them. For example, she said that she takes a medicine for headaches – which she did
13 not bring to the hearing and could not identify by name – first thing every morning; then she said
14 that sometimes she takes it in the afternoon; then she said that the previous day she had taken her
15 headache medicine at night; then she said that actually she had taken it at lunchtime; and finally she
16 said she had taken it after lunchtime at 2:00 p.m. AR 54-60. On September 25, 2009, the ALJ
17 issued a written decision concluding that Vo is not disabled and thus is not entitled to SSI. AR 9-15.
18 The Appeals Council denied review, making the ALJ's decision the final decision of the
19 Commissioner. AR 1-5. Vo now seeks judicial review of the denial of SSI.

## II. LEGAL STANDARD

**A.  Standard of Review**

This court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by

---

[3] Although the record contains an application summary indicating that Vo completed her application for SSI on November 7, 2007, the disability determination and transmittal sheets indicate that the application was not actually filed until November 30, 2007. See AR 91, 66-67. The discrepancy in the dates makes no difference to the analysis.

[4] A claimant who demonstrates disability may receive SSI beginning the month after the month in which the application is filed. 20 C.F.R. § 416.335. Thus although Vo claimed disability commencing in June 1996, she could not have received benefits for any period prior to December 2007 even if her application had been successful.

2

substantial evidence or if it is based upon the application of improper legal standards. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.

**B.     Standard for Determining Disability**

SSI is available under Title XVI of the Social Security Act when an eligible claimant's income and resources do not exceed statutory maximums and the claimant is "aged, blind, or disabled" within the meaning of the statute. 42 U.S.C. § 1382(a). A claimant is "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). "ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled; if not, the analysis proceeds to step two. Id. At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If not, the claimant is not disabled; if so, the analysis proceeds to step three. Id. At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or equals an impairment in the Listings. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is disabled; if not, the analysis proceeds to step four. Id. At step four, the ALJ determines whether the claimant has the residual functional capacity

("RFC") to do his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If so, the claimant is not disabled; if not, the analysis proceeds to step five. Id. At step five, the ALJ determines whether the claimant can do other jobs in the national economy. 416.920(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. Id. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." Bray, 554 F.3d at 1222.

### III. DISCUSSION

At step one, the ALJ determined that Vo had not engaged in substantial gainful activity since her application date of November 30, 2007. AR 11. At step two, the ALJ determined that although Vo suffers from a medically determinable impairment – "somatic complaints" – that reasonably could be expected to produce the symptoms she describes, the record evidence does not support a finding that those symptoms are so intense, persistent or limiting as to render Vo's combination of impairments "severe." AR 11-12. Because he determined at step two that Vo does not suffer a severe impairment or combination of impairments, the ALJ did not reach steps three, four or five.[5] AR 9-15. Vo claims that the ALJ erred in discounting the opinions of her treating physicians and in failing to credit her subjective complaints of pain and other symptoms.

**A.    Treating Physician's Opinion**

"A treating physician's opinion is entitled to 'substantial weight.'" Bray, 554 F.3d at 1228 (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for discounting the treating physician's opinion, supported by substantial evidence." Id. (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[6]

In concluding that Vo does not suffer from a severe impairment or combination of impairments, the ALJ discounted the opinions of Vo's treating physicians, Drs. Phuong-Thuy Le, Hong Bui, and Kathy Nguyen, and instead credited the opinions of several examining and

---

[5] The ALJ commented that even if the analysis had proceeded beyond step two he would have concluded that Vo was not disabled. AR 15.

[6] When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for disbelieving the treating physician. Bray, 554 F.3d at 1228 n.8. Here, the treating physicians' opinions are contradicted by the opinions of examining and consulting physicians. Accordingly, the ALJ need provide only "specific and legitimate" reasons for discounting the treating physicians' opinions.

4

consulting physicians, including Drs. Antoinette Acenas, Archimedes Garcia, George Lockie, and Dean Chiang. AR 9-15. The medical evidence in the record is summarized as follows.

### Dr. Phuong-Thuy Le (Treating Physician)

Dr. Phuong-Thuy Le treated Vo from June 1999 through May 2009. AR 231-267, 304-338. Dr. Le's treatment notes do not describe any clinical examinations or findings, but rather set forth Vo's subjective complaints about sleeplessness, fatigue, back pain, headaches, and forgetfulness. See, e.g., AR 232, 235. The treatment notes reflect that except for her earliest appointments, Vo consistently was well-groomed or fairly groomed, had good eye contact, and was coherent. See id. at 231-67, 304-338. Dr. Le's notes do not contain diagnoses, for the most part, although notes from August 2, 2005 indicate that Dr. Le thought Vo suffered from Chronic Fatigue Syndrome. Id. Dr. Le's treatment consisted of prescribing and renewing prescriptions for Prozac, Paxil and Seroquel from 1999 through 2008, then acquiescing to Vo's request to try Ambien instead beginning in July 2008. Id.

Dr. Le completed a Mental RFC questionnaire dated October 14, 2008. AR 223-26. Dr. Le indicated that Vo had been seen for many years, every three to four months, with each visit lasting fifteen minutes. Id. The checklist-type form lists sixteen "mental abilities and aptitudes needed to do unskilled work." AR 224. Dr. Le indicated that Vo was "unable to meet competitive standards" with respect to eleven of the sixteen categories because she had a "lack of interest, motivation and initiative." AR 224-25. Dr. Le stated that Vo would not be able to sustain a fulltime job because she had "no interest." AR 226. In the blank asking the doctor to "describe why your patient is not able to sustain any full-time work," Dr. Le wrote, "Mrs. Vo believes she cannot work." Id.

### Dr. Hong Bui (Treating Physician)

Dr. Hong Bui completed a Physical RFC questionnaire July 23, 2009. AR 271-73. Dr. Bui indicated that Vo suffered from chronic back pain, depression, and gastroesophageal reflux disease. AR 271. Dr. Bui opined that Vo had significant exertional limitations, including sitting (forty-five minutes at a time with legs elevated), standing (ten minutes at a time), lifting (ten pounds rarely and less than ten pounds occasionally), twisting, stooping, climbing, and gripping. AR 273. Dr. Bui stated that Vo was incapable of working even a low stress job and that if she did work she could be

expected to miss more than four days per month. AR 271-73.

### Dr. Kathy Nguyen (Treating Physician)

Dr. Kathy Nguyen provided chiropractic treatment to Vo in July, August, and September of 2009.[7] AR 276-292. In a report dated August 17, 2009, Dr. Nguyen discussed her examination of Vo, Vo's subjective pain complaints, and x-rays of Vo's back and right knee. AR 276-79. Dr. Nguyen diagnosed Vo with "lumbrosacral sprain/strain with accompanying vertebral subluxation," "subluxation complex of the lumbar spinal region with resultant insult to the corresponding soft tissues of the low back and lumbosacral paravertebral musculature," "acquired kyphosic and right deviation of lumbar spine complicated with degeneration of lower lumbar segment," and "inflammative arthritis of right knee complication with early degeneration." AR 279. She applied spinal manipulation, hot packs, and trigger point therapy, and recommended that Vo continue with massage, hot pack, joint support vitamins, stretching, and exercise. Id. Dr. Nguyen restricted Vo from strenuous work activity such as prolonged sitting, standing, and walking, and instructed her to wear lumbar support for lifting (not more than ten pounds) and bending. Id. Dr. Nguyen opined that Vo's prognosis was "fair." Id.

### Dr. Antoinette Acenas (Examining Physician)

Dr. Antoinette Acenas conducted a psychiatric examination of Vo on February 9, 2008 with the aid of an interpreter and prepared a written evaluation. AR 181-84. Dr. Acenas diagnosed Vo with "Depression, not otherwise specified," opined that the depression was "very mild" and that Vo was able to perform work activities and deal with usual workplace stress. AR 184. Dr. Acenas did state that although Vo would follow instructions and perform simple, repetitive tasks, she had no basis mathematic skills and thus was not able to manage her own funds. Id. Dr. Acenas found that Vo had a good chance of full recovery. Id.

### Dr. Dean Chiang (Examining Physician)

Dr. Dean Chiang conducted an internal medicine examination of Vo on February 10, 2008 and prepared a written evaluation. AR 187-89. He found that Vo had normal muscle bulk and tone, normal gait, that she walked on her own, that she was able to get on and off the examination table

---

[7] Dr. Nguyen is a doctor of chiropractic (D.C.) rather than a doctor of medicine (M.D.).

on her own, and that she sat comfortably during the examination. AR 188. He reported the findings of a full physical examination and diagnosed "[c]hronic mechanical low back pain without any signs of radiculopathy, by history or examination." AR 189. Dr. Chiang concluded that Vo could work without any restrictions on standing, sitting, or walking – in fact, he found that Vo could work without any restrictions whatsoever. Id.

### Dr. Archimedes Garcia (Consulting Physician)

Dr. Archimedes Garcia did not examine Vo but prepared a Mental RFC dated February 26, 2008 after evaluating her medical records. AR 201-203. Dr. Garcia rated Vo to be "not significantly limited" in all but one category – the single exception was the ability to understand and remember detailed instructions, as to which Dr. Garcia rated Vo "moderately limited." AR 201-02.

### Dr. Charles Fracchhia (Consulting Physician)

Dr. Charles Fracchhia agreed with Dr. Garcia's conclusion that Vo's limitations are "non severe." AR 205.

### Dr. George Lockie (Consulting Physician)

Dr. George Lockie also confirmed Dr. Garcia's RFC. AR 221.

With respect to Vo's mental RFC, the ALJ noted that although treating physician Dr. Le opined that Vo is severely limited, Dr. Le's records do not contain any reports describing mental status examinations or otherwise clarifying the basis for the limitations. AR 13-14. Additionally, Dr. Le's notes reflect that Vo's subjective complaints were simply accepted at face value. AR 15. The ALJ found that in contrast, examining physician Dr. Acenas submitted a "thorough report" that supported her conclusions. Because Dr. Acenas's findings were supported by a written report explaining her reasons, and Dr. Le's were not, the ALJ found Dr. Acenas's findings to be more persuasive. Moreover, Dr. Acenas's findings were supported by Dr. Garcia, who rated Vo to be moderately limited in only one category and otherwise not significantly limited. AR 13.

With respect to Vo's physical RFC, the ALJ concluded that Dr. Bui's findings of severe limitations was unsupported by the record as a whole. AR 14. The ALJ believed that Dr. Bui relied in large part upon Vo's subjective reporting and did not provide clinical support for his opinion. AR 15. In contrast, the ALJ concluded that Dr. Chiang's report was more consistent with the record as a

1  whole. AR 14. The ALJ noted that Dr. Nguyen's records do not qualify as medical records, and
2  pointed out that in any event Dr. Nguyen opined that although Vo had serious physical limitations,
3  her prognosis was fair. AR 14-15.

4        Vo contends that the ALJ did not apply the correct legal standards in discounting the
5  opinions of her treating physicians in favor of examining and consulting physicians. First, Vo
6  argues that the ALJ did not expressly acknowledge Dr. Le's status as a treating physician. While
7  this is true, Dr. Le's status is clear from the record, and the ALJ discussed both Dr. Le's findings
8  and the reasons for discounting those findings. AR 13-14. Accordingly, it cannot be inferred that
9  the ALJ did not realize that Dr. Le was a treating physician. Second, Vo argues that the ALJ
10 "turned the principle of the treating physician rule upside-down by setting his opinion against 'the
11 thorough report of Dr. Acenas.'" Pl.'s Mot. at 4, ECF No. 18. However, as discussed above, under
12 the applicable legal standard, the ALJ is permitted to rely upon an examining or consulting
13 physician's opinion over that of a treating physician if the ALJ provides "specific and legitimate"
14 reasons for doing so. See Bray, 554 F.3d at 1228. The ALJ did provides such reasons here.

15       Vo also argues that the ALJ erred in stating that Dr. Le did not provide a report describing
16 mental status examinations or otherwise clarifying the basis for Vo's purported limitations. Vo
17 argues that the years of Dr. Le's treatment notes included in the record support Dr. Le's opinion.
18 However, as discussed above, the treatment notes primarily consist of descriptions of Vo's self-
19 related symptoms, and the medications prescribed; they do not contain diagnoses or other clinical
20 findings that would explain the limitations found by Dr. Le. See AR 231-67, 304-338. Finally, Vo
21 asserts that the ALJ failed to provide "clear and convincing" reasons for discounting the opinion of
22 treating physician Dr. Bui. Pl.'s Mot. at 6, ECF No. 18. Again, the ALJ was not required to provide
23 "clear and convincing" reasons for discounting a treating physician's opinion in favor of that of an
24 examining or consulting physician, but rather was required to provide "specific and legitimate"
25 reasons. See Bray, 554 F.3d at 1228. The ALJ did provide specific and legitimate reasons for
26 discounting Dr. Bui's opinion – that Dr. Chiang's opinion was more consistent with the record as a
27 while and that although Dr. Nguyen found physical limitations to be present she also believed Vo's
28 prognosis to be fair. AR 14.

The court concludes that the ALJ applied the correct legal standards in weighing the medical evidence. Moreover, although Vo certainly is correct that substantial evidence in the record would support a finding that she suffers a severe impairment or combination of impairments, substantial evidence in the record also supports the ALJ's contrary finding. Because the ALJ articulated specific and legitimate reasons for crediting the opinions of the examining and consulting physicians over those of the treating physicians, Vo has failed to demonstrate error.

**B.     Vo's Subjective Complaints**

Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Lester, 81 F.3d at 834. Unless there is affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Id. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.

The ALJ found that Vo's description of the intensity, persistence, and limiting effects of her limitations were contradicted by the record evidence. For example, the ALJ pointed out that although Vo claimed that she could not walk and could do hardly anything, she sometimes worked around the house, lifting three to five pounds and cooking the rice. AR 12. The ALJ also relied upon Dr. Chiang's examination findings that Vo walked independently and was fully weight bearing, and that her gait was normal. AR 12-13; 188. Similarly, although Vo testified that she could not sit comfortably, the ALJ noted that Dr. Chiang observed her to sit comfortably during his examination of her. AR 12; 188. As is discussed above, Vo's testimony was extremely vague and contradictory. See AR 54-60. The court concludes that the ALJ provided clear and convincing reasons for concluding that although Vo suffers the symptoms of which she complains, those symptoms are not so intense or persistent as to render her limitations "severe." While other evidence in the record might support a contrary finding, it is not this court's role to second-guess the ALJ's determination when it is reached through application of the correct legal standards and is supported by substantial evidence in the record. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**IV. ORDER**

For the foregoing reasons, IT IS ORDERED THAT:

1. Plaintiff's motion for summary judgment is DENIED;
2. Defendant's cross-motion for summary judgment is GRANTED; and
3. The clerk shall close the file.

Dated: August 20, 2013

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE